## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANGELIC POTTS, et al.,

          *Plaintiffs*,

v.

DAVID LISONBEE, et al.,

          *Defendants.*

Case No. 24-1205-EFM-TJJ

## MEMORANDUM AND ORDER

In this civil suit brought under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589, *et seq.*, and Kansas state law, Plaintiffs collectively bring 34 counts against six Defendants alleging that they are liable for Plaintiffs' human trafficking and forced labor. Three Defendants bring the present Motion to Dismiss (Doc. 30), placing 14 of the 34 counts before the Court. Defendants David Lisonbee and the Estate of Bianca Lisonbee (the "Estate") move to dismiss the counts against them for lack of personal jurisdiction under Federal Rules of Civil Procedure 12(b)(2). Defendants 4Life Research LLC ("4Life"), David Lisonbee, and the Estate (collectively "the 4Life Defendants") also move to dismiss the counts against them for failure to state a claim under Rule 12(b)(6). For the reasons explained below, the Court grants the 4Life Defendants' Motion in part without prejudice and denies it in part.

# I.     Factual and Procedural Background[1]

The allegations in the First Amended Complaint ("FAC") span over 30 years and concern the interactions between a multi-level marketing company ("MLM") based in Utah and an alleged cult leader based in Hutchinson, Kansas. 4Life is a Utah-based MLM, which was founded by David and Bianca Lisonbee in 1998, and primarily sells nutritional supplements. As an MLM, 4Life hires distributors who independently work to sell 4Life products and recruit new individuals to do the same. Distributors make money based on their individual sales but can make additional money on the sales made by their "downline," which include their recruits and their recruits' respective recruits. This business structure is often described as a pyramid, where a select few top-of-the-pyramid promoters ("TOPPs") aggressively recruit numerous base-level salespeople. When forming 4Life, David and Bianca Lisonbee set out to hire as many potential TOPPs as possible. One TOPP they recruited was Defendant Michael Akins.

Akins is an alleged cult leader and a resident of Hutchinson, Kansas. Before joining 4Life, Akins created his own church, Elijah Ministries, which was reported in a 1995 Hutchinson News article as a cult. For example, the article describes how Akins considered his church his "army" and stated that "in this church, what I say is total, 100 percent law." The article further describes how Akins had multiple "spiritual wives" and sexual relationships with several underage girls in his church.

One of Akins's spiritual wives included then 16-year-old Plaintiff Angelic Potts, who lived with Akins since she was 13. Another included Plaintiff Bettina Cassel, who Akins declared as a

---

[1] The facts in this section are taken from the First Amended Complaint unless otherwise cited.

"daughter of heaven" (the term he used to describe his concubines) on her 13th birthday in 1985. Akins forced both Potts and Cassel to quit school when they turned 15 to work various jobs for him without pay and provide sexual services for him by withholding basic necessities from them and threatening them with eternal damnation and reduced "legal access" to God if they refused. Akins also forced both Potts and Cassel to assist him with his work for 4Life without pay, such as cold calling prospective clients, sending out advertisements, and attending 4Life conferences with him. The two eventually left Akins's church decades later, Potts in 2000 and Cassell in 2004.

Akins's past and questionable marriages were discussed at one of the many 4Life meetings Akins attended at David Lisonbee's home in Utah. Other 4Life TOPPs were concerned that Akins's personal life would damage the reputation of the company, but the 4Life Defendants purportedly turned "a blind eye" and instead implemented an "unspoken rule" that no one would inquire further into Akins's personal life. So, Akins remained employed when he brought young women to 4Life conferences, registered them to his hotel room, and hosted meetings in his hotel rooms with the young women present. Akins also remained employed when Cassel told Bianca Lisonbee at a 4Life conference that he forced her to have sex with him.

Akins's personal life continued to impact his professional life as a 4Life Topp in other ways. Akins and his company, Defendant Professional Networkers, were successful for 4Life at his employees'—followers of his church—expense. Akins's followers worked without pay to purchase 4Life products in bulk from the same few bank accounts, used fake names and security numbers to fill out fake purchase forms, and even took out payday loans to buy products for resale, all so Akins could maintain the minimum amount of sales volume to earn a commission. When Akins did not know how much product his downline would have to buy to qualify him for

commissions, the 4Life Defendants assigned a premier representative to assist Akins with restructuring his bulk purchases to make it look like his downline was making legitimate purchases to fulfill sales orders from new distributors he had recruited. To do this, the representative once helped Akins restructure a $25,000 payment Akins made on one of his follower's credit cards, maxing the card out in the process.

Practices like this led several of Akins's downline distributors outside of his church to file complaints against him, including a lawsuit for breach of contract and fraud. 4Life covered the judgment against Akins when he had no assets himself to do so. 4Life also paid the legal fees associated with the criminal case against Akins's son who was charged with numerous child abuse crimes. Akins seemingly had no assets to pay for his legal issues, let alone to pay his followers working on his 4Life endeavors.

Several of Akins's former followers who worked on his 4Life endeavors include Plaintiffs Jason Gray, Wendy Gray, Jessica Roberts, and Roberts's minor daughter, J.P. All four worked without pay under various physical and psychological threats from Akins. Wendy Gray was once one of Akins's spiritual wives, and Akins considered Roberts's daughter, J.P., an "angel" destined to be one of his spiritual wives. All four left Akins's church in January 2022. After leaving, Roberts emailed several 4Life executives, including Bianca Lisonbee, alleging that Akins scammed and abused his followers. This eventually led to 4Life cutting ties off with Akins in March 2022. Afterwards, Akins's followers—including Wendy Gray's own daughter—harassed and berated Jason and Wendy Gray for leaving the church and blamed them for Akins losing his role at 4Life.

Plaintiffs filed this civil suit on July 9, 2024, alleging numerous claims under the TVPRA and Kansas state law. Not only do the seek to hold Akins liable for subjecting them to human

trafficking and forced labor, but they also seek to hold David Lisonbee, the Estate, and 4Life liable for benefiting financially from Akins's actions. The 4Life Defendants now move to dismiss the claims against them under Rules 12(b)(2) and 12(b)(6).

## II.      Legal Standards

### A.      Dismissal Under Rule 12(b)(2)

Under Rule 12(b)(2), a defendant may move for dismissal of any claim in which there is no personal jurisdiction.[2] A plaintiff opposing a motion to dismiss based on a lack of personal jurisdiction bears the burden of showing that jurisdiction over the defendant is appropriate.[3] A plaintiff must make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[4] Once the plaintiff makes a prima facie showing, the defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[5]

The court views the allegations in the complaint as true if they are uncontroverted by the defendant's affidavits.[6] "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[7] "However, only the well pled

---

[2] Fed. R. Civ. P. 12(b)(2).

[3] *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000) (citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)).

[4] *Id.*

[5] *Id.* at 1227 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

[6] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[7] *Id.* (internal quotations and citations omitted).

facts of [the] plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[8] The plaintiff must support its jurisdictional allegations in a "complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."[9]

## B.     Dismissal Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[10] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[11] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[12] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[13] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[14] Viewing the complaint in this

---

[8] *Id.* (citations omitted).

[9] *Id.* at 1508 (quoting *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

[10] Fed. R. Civ. P. 12(b)(6).

[11] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[13] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[14] *Iqbal*, 556 U.S. at 678–79.

manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[15] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[16]

### III.    Analysis

The 4Life Defendants raise various arguments for dismissal of the claims against them. First, David Lisonbee and the Estate seek dismissal for lack of personal jurisdiction under Rule 12(b)(2). Second, the 4Life Defendants argue that the claims are barred by their respective statute of limitations. Third, the 4Life Defendants argue that Plaintiffs fail to state several of their claims under Rule 12(b)(6). Plaintiffs oppose dismissal and, alternatively, request an opportunity to amend in the event the Court dismisses any of their claims. The Court addresses each argument in turn.

### A.    Personal Jurisdiction over Defendants David Lisonbee and the Estate

Defendants David Lisonbee and the Estate first seek dismissal of all counts against them—counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 28, and 29—for lack of personal jurisdiction. The Court determines personal jurisdiction over parties using the law of the forum state.[17] As such, Plaintiffs must show that the exercise of jurisdiction over David Lisonbee and the Estate: (1) is legitimate under the Kansas long-arm statute; and (2) does not offend the Fourteenth Amendment's

---

[15] *See id.* at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[16] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[17] *Kesters Merch. Display Int'l, Inc. v. Surfacequest, Inc.*, 2022 WL 1489658, at *3 (D. Kan. May 11, 2022).

Due Process Clause.[18] The Kansas long-arm statute extends jurisdiction to the fullest extent the Due Process Clause allows, so the Court proceeds directly to the due process analysis.[19]

The Due Process Clause requires that a defendant "'purposefully established minimum contacts with the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'"[20] Contacts with the forum state may give rise to either general or specific jurisdiction.[21] Here, Plaintiffs assert that the Court has specific jurisdiction over David Lisonbee and the Estate.

The Court may exercise specific jurisdiction under the minimum contacts test if two elements are met: (1) David Lisonbee and the Estate "purposefully directed" their activities toward Kansas; and (2) the Plaintiffs' injuries "arise out of" those purposefully directed activities.[22] In tort-based lawsuits, "purposeful direction" requires: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of injury would be felt in the forum state."[23] The "purposeful direction" requirement ensures that "an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the

---

[18] *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (citation omitted); *Kuenzle*, 102 F.3d at 455.

[19] *See Merriman v. Crompton Corp.*, 282 Kan. 433, 146 P.3d 162, 179 (2006) (citation omitted); *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)).

[20] *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322 (10th Cir. 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

[21] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (citations omitted).

[22] *Burger King*, 471 U.S. at 472 (citations omitted).

[23] *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008).

-8-

forum state."[24] Indeed, the relationship between the defendant and the forum must arise from contacts the defendant themself created with the forum state. Consequently, the Court's analysis must focus on the Defendants' "contacts with the forum" and not merely their contacts "with persons who reside there."[25]

Here, Plaintiffs only rely on the Lisonbees' contacts with persons who reside in Kansas to argue for specific jurisdiction. Plaintiffs argue that David Lisonbee and the Estate (through Bianca Lisonbee) purposefully directed their activities toward Kansas by (1) recruiting and meeting with Akins for his work at 4Life, (2) receiving messages from Akins and Plaintiff Roberts, and (3) possessing general knowledge about Akins's questionable activities and business practices in Kansas.

True, the Lisonbees recruited Akins, a Kansas resident, to be a TOPP at 4Life, but Plaintiffs do not allege that any of the recruitment measures took place in Kansas. Similarly, Plaintiffs do not allege that any of the business meetings between the Lisonbees and Akins were in Kansas. Instead, Plaintiffs allege that the meetings took place in the Lisonbees' Utah home.

Additionally, the messages that Plaintiffs assert Akins and Plaintiff Roberts sent to the Lisonbees do not satisfy the purposeful direction requirement. While Plaintiffs allege Akins sent emails and texts to David Lisonbee to ask for extensions or exceptions for his work at 4Life, they do not allege that David Lisonbee replied to the messages. Similarly, while Plaintiffs allege that Plaintiff Roberts sent an email to Bianca Lisonbee about how Akins scammed and abused his

---

[24] *Id.* at 1071 (quoting *Burger King*, 471 U.S. at 475).

[25] *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (citations omitted).

followers, they do not allege that Bianca Lisonbee replied to the email. Even if she did, "a defendant's interaction with a plaintiff—even if allegedly tortious—is insufficient to establish personal jurisdiction."[26]

Further, possessing generalized knowledge about Akins's questionable activities in Kansas is insufficient to establish personal jurisdiction over David Lisonbee and the Estate. Purposeful direction, as the term implies, requires intentional action expressly aimed at the forum state, not mere knowledge of the allegedly tortious activities of others.[27] Plaintiffs do not assert any intentional action on the Lisonbees' part that they expressly aimed at Kansas in the FAC, and thus fail to establish the first element of specific jurisdiction under minimum contacts. Because Plaintiffs do not establish the first element, they cannot establish the second element either.[28]

Plaintiffs fail to allege the minimum contacts required for the Court to exercise specific jurisdiction over David Lisonbee and the Estate. Accordingly, the Court lacks personal jurisdiction over David Lisonbee and the Estate as currently pled in the FAC.

## B.    Statute of Limitations

The 4Life Defendants next seek dismissal of several claims against them as barred by the applicable statutes of limitations.  Specifically, the 4Life Defendants challenge two sets of counts. First, the 4Life Defendants argue that counts 8, 10, 22, and 24 brought by Plaintiffs Potts and Cassel under the TVPRA and Kansas Human Trafficking statute are barred by the 10-year statute

---

[26] *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020) (citations omitted).

[27] *See Dudnikov*, 514 F.3d at 1072; *Old Republic Ins. Co.*, 877 F.3d at 917 (concluding that a defendant's "mere awareness" of activities occurring in the forum state "does not amount to targeting" the forum state).

[28] The second purposeful direction element requires that the Plaintiffs' injuries "arise out of" the purposefully directed activities Plaintiffs fail to allege against David Lisonbee and the Estate. *Burger King*, 471 U.S. at 472.

of limitations. Second, the 4Life Defendants argue that count 28 (negligent supervision) and 29 (negligent retention) are barred by Kansas's two-year statute of limitations.[29] The Court addresses whether each set of counts are barred by their applicable statute of limitations in turn.

      *1.     Plaintiffs Potts and Cassel's TVPRA and Kansas Human Trafficking Claims*

      A civil action under the TVPRA must be brought no later than "10 years after the cause of action arose" or "10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense."[30] Similarly, a civil action under the Kansas Human Trafficking statute must "be filed within 10 years after the later of the date on which the victim: (1) [w]as freed from the human trafficking situation; or (2) attained 18 years if age.[31]

      Here, Plaintiffs Potts and Cassell were over the age of 18 when they left Akins's church in 2000 and 2004, respectively. Accordingly, they each had 10 years after leaving the alleged cult to bring their TVPRA and Kansas Human Trafficking claims. While they did not do so until 2024, well after 10 years, Plaintiffs Potts and Cassell argue that the Court should equitably toll the statute of limitations in their favor.

      "In the appropriate case, exceptional circumstances may justify tolling a statute of limitation [through equitable estoppel]."[32] The appropriate case that Plaintiffs Potts and Cassell

---

[29] Plaintiffs bring count 28 against all the 4Life Defendants. Plaintiffs bring count 29 against David Lisonbee and the Estate, but not 4Life.

[30] 18 U.S.C. § 1595(c)(1)–(2).

[31] K.S.A. 60-5003(c)(1)–(2).

[32] *Alexander v. Oklahoma*, 382 F.3d 1206, 1219 (10th Cir. 2004).

rely on here is when a plaintiff can demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."[33]

Plaintiffs Potts and Cassell argue that the traumatic experiences they suffered during their time in Akins's church "stood in [their] way and prevented timely filing" of their claims. While no court within the Tenth Circuit has done so,[34] other courts have addressed whether the control, brainwashing, and fear that a victim suffers while in a cult-like situation warrants equitable tolling of their claim.[35] Equitable tolling may be available under these circumstances, but the circumstances themselves and their impact on the ability to file suit must be sufficiently pled by the plaintiff in the complaint itself.[36]

Here, the FAC undoubtedly details the trauma that Plaintiffs Potts and Cassell suffered as members of Akins's church. After describing their horrific experiences, however, the FAC only

---

[33] *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation omitted).

[34] In their response, Plaintiffs cite *Bistline v. Parker* in support of equitable tolling. 918 F.3d 849 (10th Cir. 2019). *Bistline* concerned TVPRA claims brought by former members of the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS") and whether the TVPRA 10-year statute of limitations should be tolled. *Id.* at 878. While *Bistline* noted that "exceptional circumstances" could warrant equitable tolling, it did not evaluate whether any exceptional circumstances rooted in the plaintiffs' FLDS membership warranted equitable tolling. *Id.* at 880 ("Plaintiffs do not mention the exceptional circumstances doctrine anywhere . . . . We therefore consider this particular discovery argument forfeited.").

[35] *See, e.g.*, *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 672 (S.D.N.Y. 2024) (addressing the plaintiffs' argument for equitable tolling based on exceptional circumstances for "the total control" the defendant asserted over them, including torture, manipulation, and brainwashing, such that "they were unable to escape let alone seek help or pursue redress"); *Barba v. Seung Heun Lee*, 2009 WL 8747368, at *25–27 (D. Ariz. Nov. 4, 2009) (addressing the plaintiffs' argument for equitable tolling based on exceptional circumstances "on account of psychological manipulation, indoctrination, and weakness of mind resulting from Defendants' undue influence" (internal quotation marks omitted)).

[36] *See Levin*, 747 F. Supp. 3d at 674–75 (rejecting an equitable tolling argument because the complaint did not allege "what steps [the defendant] took to control, manipulate, or brainwash [the plaintiff], how she responded to such techniques, or how such psychological impact prevented her from filing suit at an earlier date"); *see also Holland*, 560 U.S. at 649 (placing the burden to demonstrate equitable tolling on the party seeking it).

-12-

states that Plaintiff Potts left the alleged cult in 2000, and that Plaintiff Cassell left in 2004. The FAC does not allege that Plaintiffs Potts and Cassell remained subject to Akins's control after leaving, nor does it contain any allegations demonstrating that their experiences impacted their ability to diligently pursue their claims in the following decades. Any allegations that could warrant equitable tolling of their claims only appear in their response, which cannot be considered by the Court in a motion to dismiss.[37] Accordingly, counts 8, 10, 22, and 24 are barred by the applicable statutes of limitation as currently pled in the FAC.

      2.    *Plaintiffs' Negligent Supervision and Negligent Retention Claims*

Under Kansas law, the statute of limitations for a tort action is two years, including negligent supervision and retention claims.[38] Causes of action under Kansas law "shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury."[39] For plaintiffs under the age of 18, however, Kansas law provides that "such person shall be entitled to bring such action within one year after the person's disability is removed, except that

---

[37] *See Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) ("The court's function on a Rule 12(b)(6) motion is . . . to assess whether the plaintiff's complaint *alone* is legally sufficient to state a claim for which relief may be granted.") (emphasis added) (quotation marks and citation omitted); *Chance v. Zinke*, 898 F.3d 1025, 1034 (10th Cir. 2018) (looking "only to the face of [the plaintiff's] complaint" to evaluate whether equitable tolling is warranted).

[38] *See* K.S.A. 60-513(a)(4).

[39] K.S.A. 60-513(b).

no such action shall be commenced by or on behalf of any other person under the disability more than eight years after the time of the act giving rise to the cause of action."[40]

Here, Plaintiff J.P. is currently under the age of 18 and brings her claims for events that occurred from 2019–2021. Because the events underlying her claims in counts 28 and 29 took place within eight years of this suit, J.P.'s claims are not barred by the statute of limitations.

The remaining Plaintiffs raise the same arguments for equitable tolling of counts 28 and 29 as they did for Plaintiff Potts and Cassel's TVPRA and Kansas Human Trafficking claims. But, as previously addressed, the FAC does not sufficiently plead the requirements for equitable tolling of Plaintiff Potts and Cassel's claims. As for Plaintiff Roberts, the FAC details her attempts to reach 4Life executives, including Bianca Lisonbee, for help in stopping Akins's actions after leaving the alleged cult, but it does not sufficiently plead how that or any other factors stood in her way of timely filing her claims.

The FAC, however, contains stronger allegations that the control, brainwashing, and fear that Plaintiffs Jason and Wendy Gray endured "stood in in [their] way and prevented timely filing." It details how a member of Akins's church continued to "harass and berate Jason and Wendy Gray" for leaving the alleged cult well into 2022.[41] It further details how Wendy Gray's own daughter, still a member of Akins's alleged cult along with Wendy Gray's other daughter, messaged her in

---

[40] K.S.A. 60-515(a).

[41] Doc. 17 at 70–71, ¶ 324.

2022 to inform her that Akins no longer worked at 4Life while also stating "I appreciate you being used of God (used by Satan, but indirectly used by God . . . Romans 8:28)."[42]

The FAC alleges that messages "like this were clear that despite escaping the cult at the end of 2021, Akins would continue his psychological manipulation and guilt to attempt to maintain his grip and stronghold over them as long as he could."[43] Construing these allegations in the light most favorable to Plaintiffs Jason and Wendy Gray, they sufficiently establish how exceptional circumstances—the control, brainwashing, and fear they continued to be subject to—impacted their ability to timely file suit.[44] Accordingly, the Court concludes that equitable tolling is warranted for counts 28 and 29 as brought by Plaintiffs Jason and Wendy Gray.

In sum, the statute of limitations bars counts 28 and 29 as brought by Plaintiffs Potts, Cassel, and Roberts, but it does not bar count 28 and 29 as brought by Plaintiffs J.P., Jason Gray, and Wendy Gray.

## C.    Failure to State a Claim

Lastly, the 4Life Defendants move to dismiss the claims against them under Rule 12(b)(6). They assert that all Plaintiffs fail to state their claims under the TVPRA and Kansas Human Trafficking statute—counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, and 24. They also assert in their reply brief that Plaintiffs fail to state their claims for negligent supervision and retention—counts

---

[42] *Id.* at ¶¶ 321, 325.

[43] *Id.* at ¶ 324.

[44] *See Levin*, 747 F. Supp. 3d at 674–75 (requiring that a plaintiff plead a "causal connection between [plaintiff's] mental state and the lateness of [plaintiff's] complaint" to warrant equitable tolling).

28 and 29. The Court addresses whether Plaintiffs fail to state their claims for each set of counts in turn.

> 1.    *Plaintiffs' TVPRA and Kansas Human Trafficking Claims*

Section 1589 of the TVPRA provides:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

> (2) by means of serious harm or threats of serious harm to that person or another person;

> (3) by means of the abuse or threatened abuse of law or legal process; or

> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

shall be punished as provided under subsection (d).

(b) *Whoever knowingly benefits*, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).[45]

Plaintiffs bring their TVPRA claims against the 4Life Defendants based on § 1589(b). Their claims under the Kansas Human Trafficking statute "largely track[]" their TVPRA claims.[46] K.S.A. 21-5426(a)(2) permits a civil cause of against one who "intentionally benefit[ed] financially or by

---

[45] 18 U.S.C. § 1589 (emphasis added).

[46] *See Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1165 (D. Kan. 2018) (discussing K.S.A. 21-5426); *compare* K.S.A. 21-5426, *with* 18 U.S.C. § 1589.

receiving anything of value from participation in a venture that the person has reason to know has engaged in acts set forth" in the Kansas definition of human trafficking.[47]

To properly state their claims, Plaintiffs must allege facts plausibly showing that "(1) a venture has engaged in an act in violation of Section [1589], (2) the defendant knew or should have known that the venture had violated Section [1589], (3) the defendant participated in that venture, and (4) the defendant knowingly benefited from its participation."[48] The 4Life Defendants concede that Plaintiffs sufficiently plead elements (1), (3), and (4),[49] but argue Plaintiffs fail to sufficiently plead element (2). Specifically, the 4Life Defendants narrow in on the FAC's allegations about the Hutchinson News article detailing Akins's questionable activities. The 4Life Defendants argue that the article is insufficient to establish notice because Plaintiffs do not plead that the 4Life Defendants were aware of the article.

But Plaintiffs plead that the 4Life Defendants were aware of several other—and more concerning—events. According to the FAC, Akins attended a meeting at David Lisonbee's home where they discussed whether the issues surrounding Akins's past and his marriages, particularly to a then barely-of-age Plaintiff Cassel, would damage 4Life's reputation. Taking no action, the FAC alleges that 4Life and David Lisonbee turned "a blind eye" and instead implemented an "unspoken rule where 4Life executives and distributors would not inquire further into Akins's

---

[47] K.S.A. 21-5426(a)(1)–(2).

[48] *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 553 (7th Cir. 2023).

[49] *See* Doc. 31 at 23. This concession is annotated by a footnote arguing that Plaintiffs' claims also fail against David Lisonbee and the Estate because Plaintiffs do not sufficiently establish that they participated in a venture with Akins. *Id.* at n.6. Because the 4Life Defendants waived this argument by raising it in a footnote, the Court does not address it further. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

personal life."[50] It is unsurprising then that the FAC details how Akins routinely brought young women to 4Life conferences, registering them to his hotel room, and hosting meetings in his hotel rooms with 4Life executives and distributors while the young women were present. It is similarly unsurprising that the FAC further alleges that nothing was done when Plaintiff Cassel informed Bianca Lisonbee at a 4Life outing that Akins forced her to have sex with him.

The 4Life Defendants seemingly continued to do nothing when several 4Life distributors downline from Akins reported to 4Life that Akins was unable to support their sales, even after one of these complaints turned into a lawsuit.[51] In that case, Akins recruited Art Lactose as a distributor and promised Lactose that he would help grow Lactose's business. When those promises never materialized, Lactose sued Akins for fraud and breach of contract. At trial, the FAC alleges that the evidence showed Akins did not pay his staff but instead forced their labor by threatening them with eternal damnation. It also alleges that the evidence showed that Akins had "spiritual wives" and that Akins himself had no assets. When Lactose sought to recover his monetary judgment against Akins from 4Life,[52] the FAC alleges that 4Life agreed to pay it. It further alleges that 4Life previously paid the legal expenses for Akins's son, who was charged with multiple child exploitation crimes, when Akins himself could not.[53]

---

[50] Doc. 17 at 30, ¶ 107.

[51] *See generally* Doc. 30 at Ex. B.

[52] *See Lactose v. Pro. Networkers, Inc.*, 2012 WL 10203640, at *1 (Nev. Dist. Ct. Aug. 30, 2012).

[53] Akins Jr.'s case presumably resulted in significant legal fees, considering that he successfully appealed to the Kansas Supreme Court which reversed and remanded his case for a new trial. *See State v. Akins*, 298 Kan. 592, 315 P.3d 868, 872–73 (2014).

The facts pled in the FAC sufficiently allege that the 4Life defendants knew that Akins was insolvent, forced his staff to work without pay, and engaged in (at minimum) questionable activities with young women. Viewing these allegations together reveals that the 4Life Defendants were sufficiently put on notice that Akins was engaged in trafficking in violation of the TVPRA and the Kansas Human Trafficking statute.[54] Accordingly, the Court concludes that Plaintiffs properly state their TVPRA and Kansas Human Trafficking claims such that they survive Rule 12(b)(6).[55]

### 2.     *Plaintiffs' Negligent Supervision and Negligent Retention Claims*

The 4Life Defendants' remaining arguments warrant a preliminary, procedural discussion. In their reply brief, the 4Life Defendants assert for the first time that the negligent supervision and retention claims, as brought by J.P., fail under Rule 12(b)(6). Ordinarily, courts do not consider arguments raised for the first time in a reply unless the opposing party has an opportunity to respond.[56] Because the Court previously granted Plaintiffs an opportunity to submit a sur-reply to this argument, the Court addresses it here. But David Lisonbee and the Estate filed a response to the sur-reply, again asserting a new argument that these claims, as brought by all Plaintiffs, fail under Rule 12(b)(6) because they can only be brought against an employer, not individuals in their personal capacities. Because David Lisonbee and the Estate raised this argument for the first time

---

[54] *See Blistline*, 918 F.3d at 878 (considering the plaintiffs' human trafficking claims "read in light of the complaint as a whole").

[55] Because the Court concludes that the FAC plausibly establishes actual knowledge, it need not address the 4Life Defendants' arguments surrounding constructive notice and whether they had a duty to investigate.

[56] *See* Doc. 54; *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005).

in the response to the sur-reply, the Court exercises its discretion and will not consider that new argument here.[57] It will only address the argument briefed in the reply and sur-reply.

Turning to Plaintiff J.P.'s state law claims, the 4Life Defendants argue that the FAC fails to state negligent supervision and retention claims for two reasons: (1) she fails to plead that a "special relationship" existed between Akins and the 4Life Defendants; and (2) she fails to plead that the 4Life Defendants knew or should have known that an undue risk of harm to J.P. existed because of 4Life's employment of Akins.

The Court first addresses the 4Life Defendants' second contention. Because the parties make the same arguments regarding knowledge of harm as they did for Plaintiffs' human trafficking claims, the Court concludes that J.P. sufficiently pleads that the 4Life Defendants had knowledge of an undue risk of harm to J.P. by employing Akins.[58] Thus, the 4Life Defendants' second basis for dismissal fails.

As to the 4Life Defendants' first contention, their special relationship argument concerns a basic element of negligence. As with any negligence claim, Plaintiff J.P. must sufficiently plead that the 4Life Defendants owed her a duty.[59] "It is the general rule that an actor has no duty to control the conduct of a third person to prevent that person from causing harm to others unless a 'special relationship' exists between the actor and the third party or the actor and the injured

---

[57] *See James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 906 (D. Kan. 2021) (stating a court "can elect to do nothing with [the] new materials" raised for the first time in a reply pleading).

[58] *See supra* Section III.C.1.

[59] *See Nero v. Kansas State Univ.*, 253 Kan. 567, 861 P.2d 768, 772 (1993) ("Without a duty, there can be no breach to support a plaintiff's [negligence] claim.").

party."[60] Here, Plaintiff J.P. asserts that the 4Life Defendants had a special relationship with Akins, despite conceding that Akins was an independent contractor.

A special relationship between an employer and an independent contractor can exist when an "employer retains control over an independent contractor's work."[61] An employer retains control when they "have retained at least some degree of control over the manner in which the work is done . . . . There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."[62]

Plaintiff J.P. asserts that the 4Life Defendants exerted sufficient control over Akins to establish a special relationship between them, in part, by pointing to FAC's allegations that 4Life maintains rules governing permissible selling practices and reviews submission of sales data for compliance. The 4Life Defendants counter that providing rules does not rise to the level of control necessary to establish a special relationship, citing *McDonnell v. Music Stand, Inc.* for support.[63]

In *McDonnell*, the Kansas Court of Appeals considered whether the defendant had sufficient control over a third party such that the third party could be considered an employee instead of an independent contractor.[64] The plaintiff argued that there was sufficient control, in part, because the third party "was told [the defendant] preferred cash, [and] this indicates control

---

[60] *Id.* (quotation marks and citation omitted).

[61] *Hauptman v. WMC, Inc.*, 43 Kan. App. 2d 276, 224 P.3d 1175, 1188 (2010) (citing Restatement (Second) of Torts § 414 (1965)).

[62] *Id.* (quoting Restatement (Second) of Torts § 414 cmt. c (1965)).

[63] 20 Kan. App. 2d 287, 886 P.2d 895 (1994).

[64] *Id.* at 899.

-21-

over [the third party]'s collection methods."[65] The court rejected this argument, concluding that "[t]his instruction merely goes to the *results* of [the third party]'s work, not to the *method* of collection" and that employers are permitted "to control the results of an independent contractor's work" without creating a special relationship.[66]

While implementing general rules or preferences to control results alone is not enough to establish control for special relationship purposes,[67] the FAC here pleads facts plausibly suggesting that the 4Life Defendants exercised control over Akins's *methods*. Specifically, it pleads that "the 4Life Defendants *assigned* a premier representative, Bobbi Wright, to work with Akins."[68] Once the 4Life Defendants assigned their representative, the FAC alleges that she helped Akins "structure his bulk purchases in such a way to make it look like his downline cult members were making actual purchases of product to fulfill sales orders from new distributors they had recruited."[69] It alleges a specific example of how the 4Life Defendants' representative once maxed one of Akins's follower's credit cards out, $25,000 total, and structured that payment "so it could appear as if they were recruiting distributors who were selling products."[70] These actions do not reflect a general rule, a simple preference, or mere control over results, they reflect the 4Life Defendants' control over Akins's *methods* to obtain results.

---

[65] *Id.*

[66] *Id.* (emphasis in original).

[67] *See id.*

[68] Doc. 7 at 42, ¶ 170 (emphasis added).

[69] *Id.*

[70] *Id.* at 43, ¶ 172.

The Court recognizes that Plaintiffs' special relationship argument seemingly hinges on the limited allegations regarding the 4Life Defendants' assignment of their personal representative to structure Akins's bulk purchases.[71] While the 4Life Defendants' position may prevail in a future summary judgment motion, the Court finds it plausible at this stage that a special relationship existed between the 4Life Defendants and Akins. Accordingly, the Court concludes that Plaintiff J.P. sufficiently pleads that a special relationship existed between the 4Life Defendants and Akins such that her negligent supervision and retention claims survive Rule 12(b)(6).

**D.    Leave to Amend**

In their opposition to the Motion to Dismiss, Plaintiffs request leave to amend so they can cure the deficiencies in the FAC with the benefit of discovery. Under Rule 15(a)(2), once a responsive pleading has been filed, "a party may amend its pleading only with the party's written consent or the court's leave."[72] Rule 15(a)(2) provides that courts should "freely give leave when justice so requires."[73] Plaintiffs, however, have not filed a written motion for leave to amend, so the Court will not consider their request to do so at this time.[74] Plaintiffs may formally request leave to amend pursuant to D. Kan. R. 15.1.

---

[71] Plaintiffs also argue that the allegations regarding Akins's and David Lisonbee's close personal friendship establishes a special relationship (in the legal sense) between the 4Life Defendants and Akins sufficient to impose liability for negligent supervision and retention. The Court cannot find any authority—and Plaintiffs provide none—supporting this argument.

[72] Fed. R. Civ. P. 15(a)(2).

[73] *Id.*

[74] *See Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010) ("[The plaintiff] did not file a written motion for leave to amend; instead, in her opposition to the motion to dismiss, she merely suggested she should be allowed to amend if the court concluded her pleadings were infirm. This is insufficient.").

The 4Life Defendants request that any dismissals are done so with prejudice to prevent Plaintiffs an opportunity to formally request leave to amend. But no scheduling order has been entered yet, nor has a deadline for amending the Complaint in this case been imposed. Permitting an opportunity to request leave to amend will not unduly prejudice the 4Life Defendants because they will have an opportunity to file a new motion to dismiss if Plaintiffs fail to sufficiently plead their claims against them. Accordingly, the claims dismissed by this Order are dismissed without prejudice.

## IV.    Conclusion

Because this Order addresses numerous claims, the Court summarizes which of the challenged claims—counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 28, and 29—are dismissed and which remain.

All challenged claims are dismissed as brought against David Lisonbee and the Estate for lack of personal jurisdiction. As such, David Lisonbee and the Estate are dismissed as defendants to the case. Additionally, Plaintiff Potts and Cassel's claims against the 4Life Defendants are dismissed as barred by the applicable statute of limitations. Further, Plaintiff Roberts's negligent supervision and retention claims are dismissed as barred by the applicable statute of limitations.

The remaining claims of those challenged include:

- Count 2 brought by Jason Gray against 4Life;
- Count 4 brought by Wendy Gray against 4Life;
- Count 6 brought by Jessica Roberts against 4Life;
- Count 12 brought by J.P. against 4Life;
- Count 14 brought by Jason Gray against 4Life;
- Count 16 brought by Wendy Gray against 4Life;
- Count 18 brought by Jessica Roberts against 4Life;
- Count 20 brought by J.P. against 4Life; and
- Count 28 brought by J.P., Jason Gray, and Wendy Gray against 4Life.

-24-

Plaintiffs may file for leave to amend if they can sufficiently plead their other claims in light of the Court's discussion above.

**IT IS THEREFORE ORDERED** that Defendants 4Life Research LLC, David Lisonbee, and the Estate of Bianca Lisonbee's Motion to Dismiss (Doc. 30) is **GRANTED in part without prejudice and DENIED in part**.

**IT IS SO ORDERED.**

Dated this 16th day of October, 2025.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

-25-